## FINKELSTEIN v. CITY of SAPULPA.

No. 15094—Opinion Filed Jan. 20, 1925.

Rehearing Denied March 10, 1925.

**1. Municipal Corporations—Powers — Ordinance Condemning Junk Yards as Nuisances—Reasonableness.**

The extent of the power of the court in the instant case is limited to a determination as to whether the ordinance in question is, under the facts, unreasonable and arbitrary, and if such ordinance is not unreasonable or arbitrary, the determination by the city commissioners that the junk yard in question was injurious to the health and safety of the community and a public nuisance is conclusive upon the court.

**2. Nuisance—"Public Nuisance."**

A "public nuisance" is not necessarily one affecting the government or the entire community of the state, but it is public if it affects the surrounding community generally or the people of some local neighborhood.

**3. Municipal Corporations—Validity of Ordinance Declaring Junk Yards Nuisances —Motive for Commissioner's Veto.**

The motive of a member of a city commission in voting for the enactment of an ordinance declaring a junk yard in a residential district of the city a nuisance cannot be inquired into for the purpose of determining the validity of the ordinance.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by A. Finkelstein against the city of Sapulpa. From judgment in favor of defendant, plaintiff brings error. Affirmed.

Thompson & Smith, for plaintiff in error.

F. E. Murrell and Hughes, Foster & Ellinghausen, for defendant in error.

Opinion by PINKHAM, C. This was an action instituted in the district court of Creek county by the plaintiff in error, plaintiff in the court below, against the city of Sapulpa, to enjoin the enforcement of the provisions of ordinance No. 540, of said city; a copy of the ordinance in question was attached to plaintiff's petition and made a part thereof.

Plaintiff alleged in his petition that the defendant is a city of the first class, and has what is commonly known as the commission and managerial form of government; that on the 9th day of July, 1923, the board of commissioners held a special meeting and enacted and approved ordinance No. 540, entitled "An ordinance declaring that the junk yard located on lots 1 and 4 in block 45, of the city of Sapulpa, to be a nuisance and ordering its removal and declaring an emergency;" that plaintiff was, at the time of the passage of said ordinance and for a long time before then, the owner of and resided on the real estate described therein, and conducted the junk business and yard denounced therein as a nuisance. Plaintiff prayed for an injunction against the defendant city and all its officers, enjoining them from enforcing the said ordinance.

The court sustained a general demurrer to the plaintiff's petition and denied the injunction, and the plaintiff stood on his petition and prosecutes this appeal.

This ordinance, No. 540, recited, among other things:

"Whereas the board of commissioners of the city of Sapulpa, after full, free, careful, and complete investigation, consideration, examination, and consideration of the premises, find that the said junk yard with the said rubbish, scrap iron, junk pipe, junk rope, old and worn out and junked automobiles, and old and worn out casing and other junk and refuse kept, stored, piled, and scattered around over said lots in block 45, city of Sapulpa, have become and are unsafe, dirty, filthy, unsanitary, and dangerous condition and such condition has existed for several months heretofore; that said premises with said junk and accumulations thereon is of general unkempt condition and furnishes a place for rats and vermin to infest and harbor and is of constant nuisance to the health, safety, and repose of owners and occupants of adjoining and nearby property; that said junk yard so maintained is on and alongside of the principal paved street of the city of Sapulpa, and one of the main state highways, leading through said city, and presents to the public a dirty, filthy, and obnoxious appearance and reflects on the civic welfare and pride of the city."

This is followed by a declaration and determination that the plaintiff's junk yard and buildings constitute a nuisance, and providing for its abatement, and for a punishment of its violation.

The proposition submitted and discussed by counsel for plaintiff in their brief is that the ordinance in question is void for the reason that it shows on its face that it is an attempt to exercise judicial power without authority or process of law.

In a number of decisions of this court the rule has been announced that municipal corporations in this state have the power to declare what shall constitute a nuisance, and the power to prevent the same; that under such a declaration of power a municipality may declare anything a nuisance which is so per se, or which by rea-

son of its location or on account of local conditions or surroundings may or does become a nuisance within the common law or statutory definition thereof; and that a determination of the question by a municipality through its legislative body is under such a grant of power conclusive upon the courts. In re Jones, 4 Okla. Cr. 74, 109 Pac. 570, 31 L. R. A. (N. S.) 458, 140 Am. St. Rep. 655; Duncan Elec. & Ice Co. v. City of Duncan, 64 Okla. 211, 166 Pac. 1084; Calkins v. Ponca City, 89 Okla. 100, 214 Pac. 188.

In Calkins v. Ponca City, supra, an ordinance very similar to the ordinance in the instant case was upheld.

In the Ponca City Case the ordinance recited that after full, free, careful, and complete investigation, examination, and consideration of the premises the board of commissioners of the city of Ponca City found that the structures consist of wooden, paper, and sheet-iron buildings, and all other structures and their appurtenances situated and located on certain lots in the town site of Hartman, a local subdivision of the city of Ponca City, have become and now are in unsafe, decaying, dirty, unsanitary, and dangerous conditions, and provided for the enforcement of its provisions.

The same contention was made in the Ponca City Case as in this case, that is, that the city commissioners of Ponca City were without authority to pass an ordinance and determine that the buildings and lots thereon were a public nuisance, and that by so doing they were acting as a judicial body and not as a legislative body, and it was argued that the city commissioners, as a body, had no judicial powers.

In the opinion in the Ponca City Case it is said:

"The record, we think, fails to show that the action of the city commissioners was arbitrary; this being true, the question was not whether the buildings were in fact nuisances which a court of equity would have decreed abated as such, but whether the action of the commissioners in passing the ordinance in question was in excess of their authority and arbitrary. Feeling that the ordinance did not exceed their delegated authority and that it was neither arbitrary nor wrongful, we think that its legislative determination that the buildings in question were public nuisances and ordering them abated is conclusive on the courts."

It is argued by the plaintiff that the Ponca City Case is clearly applicable to the instant case; that there is a distinction between old and decaying buildings, which constitute a menace to pedestrians, and the conduct of a junk yard which is a lawful business.

We think the principle involved in the Ponca City Case is clearly applicable to the facts presented in the case at bar. That the junk business is such a business as may or may not be a nuisance, depending upon its location or use or local condition or surrounding, is held by many authorities.

In this state, as in many other states, junk dealers are placed directly under police supervision and control. Secs. 1954, 1955, Comp. Stat. 1921.

In 19 R. C. L. sec. 164, title "Municipal Corporations," it is said:

"Dealers in junk and second hand articles are subject to rigid control and regulation for several reasons. First, like pawnbrokers, they are constantly receiving stolen goods, either innocently or otherwise; second, they are very apt to gather together a mass of inflammable matter in a combustible building; third, they frequently have in their possession clothing and other articles infected with disease. Reasonable regulations such as those which are commonly applied to pawnbrokers may undoubtedly be enforced against dealers in junk and other second hand articles."

"A very clear abuse of police power must be shown in order to justify the court in declaring ordinances regulating pawnbrokers, junk dealers, and dealers in second hand goods to be unreasonable and void." Grand Rapids v. Braudy (Mich.) 32 L. R. A. 116.

"The question of reasonableness of an ordinance regulating a certain business is one of fact of which the body enacting it is the best judge and in the absence of a clear showing to the contrary its reasonableness must be presumed." City of Butte v. Paltrovich, 30 Mont. 18.

It is clear, we think, from an examination of plaintiff's petition and of the ordinance in question that the plaintiff's junk yard was declared to be a nuisance and its abatement ordered for the reason that its location and operation on the lots described was unsafe, dangerous, and injurious to persons and property situated in close proximity thereto. The ordinance did not suppress or destroy plaintiff's business or seek to deprive him of his property, but required its removal to some other locality where its operation could be carried on with more safety than in a residential district of the city.

"A 'public nuisance' is not necessarily one affecting the government or the entire community of the state, but it is public if it affects the surrounding community generally or the people of some local neighborhood." Calkins v. Ponca City, 89 Okla. 100, 214 Pac. 188.

We conclude that the ordinance did not exceed the authority of the defendant city, and that it was neither arbitrary nor wrongful, and that the city's determination that the junk yard in question was a public nuisance and ordering it abated is conclusive on the courts.

It is further contended that one of the commissioners has a personal interest in the matter because he resided near the junk yard, and because he had unsuccessfully endeavored to have the junk yard removed in an action instituted by him in the district court.

We think the motive of one of the commissioners in voting for the ordinance is immaterial and cannot be considered here for the purpose of determining the validity of the ordinance in question. People v. Gardner, 143 Mich. 104, 106 N. W. 541.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 28 Cyc. pp. 715, 774; (2) 29 Cyc. p. 1152; (3) 12 C. J. p. 892.