104 So.2d 129 (1958)
CITY OF MIAMI BEACH, a municipal corporation, and D. Lee Powell, Harold Shapiro, Marcie Liberman, Harold B. Spaet, Bernard A. Frank, Melvin Richard and Kenneth Oka, as Mayor and Councilmen, respectively, of the City of Miami Beach, Appellants,
Maurice Rafkin and Robert L. Turchin, Intervenor-Appellants,
v.
Theresa SCHAUER, Frank Katzentine, Fred Snite and Irwin Green, Appellees.
No. 57-240.
District Court of Appeal of Florida. Third District.
June 30, 1958.
Rehearing Denied July 29, 1958.
*130 Joseph A. Wanick, City Atty., Miami Beach, and Ben Shepard, Miami, for appellants.
Cypen, Salmon & Cypen, Miami Beach, for intervenor-appellants.
Sibley, Grusmark, Barkdull & King, Miami Beach, for appellees.
CARROLL, CHAS., Chief Judge.
On April 17, 1957, the city council of the City of Miami Beach enacted an ordinance amending the city's comprehensive zoning ordinance. The purpose and effect of the ordinance was to change the zoning on an extensive area fronting on the Atlantic ocean from a private residence or estate district to a multiple family or hotel district. The amendment was accomplished by the required affirmative votes of five of the seven members of the city council. One of those affirmative votes was cast by the then councilman S.J. Halperin. Halperin held a personal ownership interest in some of the property affected, which would be increased by more than $500,000 in value as a result of this change in zoning.
Owners of near-by property filed suit in the circuit court to have the amendatory ordinance declared invalid and to enjoin its enforcement. In addition to urging that there was a lack of lawful notice of the amendatory proceedings, and contending that the ordinance was ill-advised, arbitrary and confiscatory, the plaintiffs alleged that the action of the city council in amending the zoning ordinance was quasi-judicial, that councilman Halperin was disqualified for personal interest, and that because his vote was required for its passage, the ordinance should be struck down.
One of the two original plaintiffs withdrew from the suit and three other property owners were substituted as plaintiffs. Certain other landowners, who favored the amendment to the zoning ordinance, applied for and were granted leave to intervene.
*131 The city and its mayor and councilmen answered. The cause was heard before the chancellor, who entered a final decree on August 22, 1957, invalidating the ordinance. The chancellor held, in effect, that the personal interest of Halperin disqualified him from participation, and that because his vote was essential to the passage of the ordinance it was not validly enacted.
The city and its governing body and the intervening property owners have joined in an appeal from the final decree.
In their brief, appellants raised one question, and that is "whether a court may inquire into the motive of a city council for passing an amendment to a comprehensive zoning ordinance when the power to pass such legislation has been conferred on the city council and that power is exercised in the manner prescribed by law."
It is well settled that the motives of the governing body of a municipal corporation, in adopting an ordinance legislative in character, will not be the subject of judicial inquiry. It is also established that the actions of judicial tribunals or of bodies acting quasi-judicially are subject to judicial scrutiny and review.
From the final decree in this case, it is not clear whether in questioning the motives of councilman Halperin the chancellor considered that the action of the city's governing body was legislative or was quasi-judicial. The chancellor relied for authority on the case of Aldom v. Borough of Roseland, 42 N.J. Super. 495, 127 A.2d 190, in which a similar result was reached by an intermediate appellate court of New Jersey, which viewed such municpal action as being quasi-judicial. In so holding, that court appears to stand alone, and against the established weight of authority.
It is conceded on this record that councilman Halperin had a personal financial interest which would be enhanced by the action taken. A statement which Halperin made at the time the matter was before the city council, and which is shown on the record, contained a frank admission of his interest. His statement went further and showed he recognized his obligation as a councilman to consider the matter on its merits. Whether having such a financial interest he could exercise independent judgment on the merits uninfluenced by the prospect of personal gain, is something which can not be determined. But councilman Halperin understood the situation and undertook to vote on the proposition on its merits. That is important in this case as showing that the evidence does not point to fraudulent action on his part, but rather the contrary. The chancellor concluded that Halperin's interest compelled the court to assign a fraudulent motive to him.
On the question, vital to the decision of this case, of whether the passage of this ordinance amending the comprehensive zoning ordinance was legislative or quasi-judicial action of the city, we hold that the city council was not acting in a quasi-judicial capacity, but in the exercise of its legislative powers.
The passage of the comprehensive zoning ordinance in 1930 was purely a legislative function. See McQuillin, Municipal Corporations, Vol. 8, § 25.54, where it is stated (pp. 119-120):
"It is fundamental that the enactment of a zoning ordinance constitutes the exercise of a legislative and governmental function. It is an exercise of legislative power residing in the state and delegated to a municipal corporation. Likewise, the amendment of a zoning ordinance is a governmental function. * * *"
We have been shown no convincing authority holding that an ordinance amending such a comprehensive zoning ordinance would be quasi-judicial action. That question was raised in the case of Blankenship v. City of Richmond, 188 Va. 97, 49 S.E.2d 321. In that case the court had before it for consideration a similar ordinance *132 enacted to change the zoning classification of a particular area, and, as here, it was contended that the interest of one of the city officials whose vote was involved in the amendment disqualified him for interest. In order to avoid the rule that the motives of those involved in legislative action will not be inquired into, the argument was advanced that although the comprehensive zoning ordinance represented legislative action by the city, an ordinance passed for the purpose of changing or amending the original zoning ordinance would be considered quasi-judicial action. In rejecting that contention the Virginia court said (49 S.E.2d at page 325):
"It would be flagrantly inconsistent to hold that the adoption of a comprehensive zoning law is legislative in character and that the amendment to such a law was a quasi-judicial act. If the original act is wholly legislative, an amendment to it partakes of the same character."
In support of the contention that the action in this instance was quasi-judicial, appellees call our attention to the fact that the city council's action involved the receiving of testimony, the weighing of evidence and consideration of various facts and circumstances, as is done by judicial bodies. In enacting laws legislators necessarily must be advised on such matters. Their diligence in becoming so informed prior to making such enactments does not change the character of their action from legislative to quasi-judicial. What has just been said, of legislative bodies, should not be construed as holding that the action of legislative committees or sub-committees, or zoning boards, which are required to hold hearings and make reports in the form of findings and conclusions or recommendations, do not operate quasi-judicially.
Therefore, when legislative rather than quasi-judicial action is involved, the authorities appear uniform in holding that, in the absence of a showing of fraud, the motives of a city council will not be subject to judicial scrutiny.
Thus, in City of Coral Gables v. Coral Gables, Inc., 119 Fla. 30, 160 So. 476, 478, the Supreme Court of Florida said:
"It is settled that the courts will not inquire into the motives of the legislature in enacting laws. And by analogy to this rule it is very generally held that the courts cannot inquire into the motives of members of a municipal council for the purpose of determining the validity of ordinances enacted by them. Soon Hing v. Crowley, 113 U.S. 703, 5 S.Ct. 730, 28 L.Ed. 1145; Cramton v. City of Montgomery, 171 Ala. 478, 55 So. 122; Kittinger v. Buffalo Traction Co., 160 N.Y. 377, 54 N.E. 1081; Moore v. Village of Ashton, 36 Idaho 485, 211 P. 1082, 32 A.L.R. 1512."
The rule was stated by the Supreme Court of the United States in Angle v. Chicago, St. P., M. & O.R. Co., 151 U.S. 1, 14 S.Ct. 240, 247, 38 L.Ed. 55, 64, as follows:
"The rule upon which this decision rests has been followed in many cases, and has become a settled rule of our jurisprudence. The rule, briefly stated, is that whenever an act of the legislature is challenged in court the inquiry is limited to the question of power, and does not extend to the matter of expediency, the motives of the legislators, or the reasons which were spread before them to induce the passage of the act. This principle rests upon the independence of the legislature as one of the co-ordinate departments of the government. It would not be seemly for either of the three departments to be instituting an inquiry as to whether another acted wisely, intelligently, or corruptly. * *"
In Blankenship v. City of Richmond, supra, 188 Va. 97, 49 S.E.2d 321, 323, the *133 Supreme Court of Appeals of Virginia said:
"Every public official whether a member of the administrative, legislative, or judicial branch of the government, should impartially perform his official duty for the good of the public, uninfluenced by thoughts of personal gain or loss. Such officials are trustees for the people who have a right to require them to exercise their best judgment in everything that appertains to the people or their welfare, unaffected and unprejudiced by anything that might inure to the officials' own interest as individuals. However, where a member of the legislative branch of the government offends in these particulars in performance of a purely legislative duty, he is answerable to the electors from whom he derived his official position and not to the courts which have no power to inquire into the motives which prompted his action on a purely legislative matter."
Also, in McQuillin, Municipal Corporaions, Vol. 8, § 25.278, the following appears (pp. 681-682):
"The general rule is that courts will not and cannot inquire into motives of members of a municipal governing body or other zoning authority where the validity of zoning is under consideration. Nor will or can they inquire into the factors or reasons that move a city council in passing a zoning ordinance. Likewise, courts have nothing to do with the wisdom, desirability or good policy of zoning. Amendment, not judicial construction, is the remedy for unsatisfactory constitutional restrictions on property rights.
"The limitations on courts and their attitude of restraint with respect to interference with zoning, hereinabove discussed, pertain to the judgment of the municipal legislative body that a zoning measure has a reasonable relationship to the public health, safety, morals or welfare. * * *"
See, also, in support of this proposition, Detroit United Ry. v. City of Detroit, 255 U.S. 171, 41 S.Ct. 285, 65 L.Ed. 570; International Ladies' Garment Workers' Union v. Seamprufe, Inc., D.C.Okl., 121 F. Supp. 165; Barr v. City Council of Augusta, 206 Ga. 753, 58 S.E.2d 823; Rowe v. City of Pocotello, 70 Idaho 343, 218 P.2d 695; Huston v. City of Des Moines, 176 Iowa 455, 156 N.W. 883; City of Shreveport v. Conrad, 212 La. 737, 33 So.2d 503; Anderson v. City of St. Paul, 226 Minn. 186, 32 N.W.2d 538; Oscar P. Gustafson Co. v. City of Minneapolis, 231 Minn. 271, 42 N.W.2d 809; People on Complaint of Main v. Klufus, 1 Misc.2d 828, 149 N.Y.S.2d 821; Johnson v. City of Vinita, 172 Okla. 376, 45 P.2d 1089.
It should be noted that we are not concerned here with a contractual agreement with a municipality in which a councilman has a personal interest. This case involves a legislative enactment. See City of Coral Gables v. Coral Gables, Inc., supra, 119 Fla. 30, 160 So. 476; 37 Am.Jur., Municipal Corporations, § 275.
Under existing law the personal interest of councilman Halperin, and the fact that he stood to receive substantial gain from the action of the city council in which he took part, did not operate to disqualify him or destroy the effectiveness of his vote. As pointed out above, the court was not authorized to inquire into his motives as a legislator and to disqualify him for his interest. Such a disqualification of a member of the city council would have to be provided for by legislation. By way of comparison, attention is directed to section 120.09 Fla. Stat., F.S.A., in which provision has been made by statute for disqualification and temporary substitution of certain members of boards or commissions under state jurisdiction, where it is made to appear that a member's interest, such as was developed *134 in this case, should prevent his participation. In the absence of some such provision, applicable to the city council of the City of Miami Beach, the vote in question must stand.
We refrain from comment on the moral aspects involved, because the holding of this court must be based on law and not on moral considerations. We hold that the learned chancellor was in error in judicially questioning the motives of a member of the city council acting in his legislative capacity, under the circumstances presented in this case, and in declaring invalid the ordinance in question, and that for such error the final decree must be reversed.
The chancellor ruled out the ordinance because of the personal interest of Halperin. In so doing, his decree did not make findings or rule on other grounds relied on by the plaintiffs in their complaint including the contention that the ordinance was unreasonable, arbitrary and confiscatory, and an improper exercise of the police power, having no reasonable or proper relation to the health, morals, comfort, safety or welfare of the public.
We conclude that the cause should be remanded for further proceedings and for decision by the circuit court of the other grounds set forth in the complaint on which the plaintiffs relied. See Treasure, Inc. v. Hotel and Restaurant Employees and Bartenders' Union, Fla. 1954, 72 So.2d 670, 671.
However, with regard to plaintiffs' contention that the ordinance was unreasonable and arbitrary and was an improper exercise of the police power, we invite the chancellor's attention to the subsequently decided case of City of Miami Beach v. Prevatt, Fla. 1957, 97 So.2d 473, which, while not determining that question in a manner to bind the parties to this case, may be construed to have foreclosed the question as to the area involved in this suit, precluding the necessity to further consider and rule thereon.
Accordingly, the decree appealed from is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.
Reversed and remanded.
PEARSON and HORTON, JJ., concur.